UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| KATE ADAMS,<br><br>            Plaintiff,<br><br>    v.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the state of California; SHERIFF SCOTT JONES in his individual capacity; and DOES 1-10,<br><br>            Defendants. | No. 2:22-cv-01499 WBS KJN<br><br>ORDER RE: DEFENDANTS' MOTION TO DISMISS CLAIMS IN FIRST AMENDED COMPLAINT |

----oo0oo----

On January 11, 2023, this court granted defendants' motion to dismiss plaintiff's complaint in its entirety. (Order (Docket No. 16).)  On February 15, 2023, the court denied plaintiff's motion for partial reconsideration of the dismissal of plaintiff's First Amendment and First Amendment conspiracy claims (Claims 3 and 4).  (Docket No. 28.)

Plaintiff subsequently filed her First Amended Complaint which, among other things, re-alleges her First

1

1    Amendment and First Amendment conspiracy claims with little or no
2    additional allegations in support.  Plaintiff again alleges that
3    she sent a text message to a friend which said, "'Some rude
4    racist just sent this!!" along with the two racist images that
5    she had been sent.  (First Am. Compl. ¶ 89.)

6            Presently before the court is defendants' to dismiss
7    only those claims for violation of the First Amendment and First
8    Amendment conspiracy (Claims 3 and 4).  (Mot. (Docket No. 25-1).)
9    In its prior order dismissing the original Complaint, the court
10   found that plaintiff's text messages were not a matter of public
11   concern and thus plaintiff failed to allege facts sufficient to
12   support her First Amendment claims.  (Order at 12-13.)

13           In her opposition to the present motion, plaintiff
14   acknowledges that she does not advance any new allegations
15   regarding her First Amendment claims,[1] and instead incorporates
16   her previously made arguments.  (See Opp'n at 2 (Docket No. 29).)
17   Plaintiff states that she "files this opposition and the
18   arguments contained herein solely for the purpose of preserving
19   her right to appeal the First Amendment claims."  (Id.)  After
20   hearing the parties' oral arguments with regard to these claims,
21   the court reaffirms its determination that plaintiff has failed
22   to sufficiently allege a claim based upon violation of the First

---

[1] Plaintiff's new allegations supporting her other claims include that plaintiff and Sheriff Jones spoke on the phone to discuss the potential media issues if the text messages became public, the lawyer for the county informed plaintiff through her union counsel of Sheriff Jones's intention to terminate her if she did not resign, and information from the NAACP regarding its source for the published open letter regarding plaintiff.  (See First Am. Compl. ¶¶ 106, 107-111, 116-118.)

amendment.

To determine whether a government employer has violated the First Amendment, the Ninth Circuit applies a five-part test which asks:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). The plaintiff bears the burden on the first three steps and therefore, to support a First Amendment claim, must show that (1) their speech was a matter of public concern; (2) that they were speaking as a private citizen; and (3) that their speech was a substantial or motivating factor in their termination. Id. at 1070-71.

As argued by the parties, the crux of this motion is whether plaintiff's texts addressed a matter of public concern. The Ninth Circuit has "not articulated a precise definition of 'public concern,' recognizing instead that such inquiry is not an exact science." Desrochers v. City of San Bernardino, 572 F.3d 703, 709 (9th Cir. 2009) (citations and internal quotations omitted). Instead, the court "relie[s] on a generalized analysis of the nature of the speech." Id. To determine "whether an employee's speech addresses a matter of public concern," a court must consider "the content, form, and context of a given statement, as revealed by the whole record." Eng, 552 F.3d at

3

1070 (citations and quotations omitted).  As the Ninth Circuit recognizes, "courts have had some difficulty deciding when speech deals with an issue of 'public concern.'"  Id. (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1113-14 (9th Cir. 1983)).

The present case is unlike the typical cases involving a public employee who alleges she was terminated on account of her speech.  Such cases usually involve either expressing a workplace grievance, which is not considered a matter of public concern, or bringing attention to a social or political topic, which is considered a matter of public concern. Compare Connick v. Myers, 461 U.S. 138, 148 (1983) (addressing criticism of supervisor's decision to transfer assistant district attorney); Desrochers, 572 F.3d at 717  (addressing criticism of criticizing supervisor's decision to transfer one police officer and discipline another); Lamb v. Montrose Cnty. Sheriff's Off., No. 19-1275, 2022 WL 487105, at *7 (10th Cir. 2022) (addressing speech expressing dislike of workplace environment, including racism and the lack of professionalism), with Rankin v. McPherson, 483 U.S. 378 (1987) (addressing speech expressing support for attempted assassination of then President Reagan); Hernandez v. City of Phoenix, 43 F.4th 966, 978-79 (9th Cir. 2022) (addressing posting on Facebook articles about religious intolerance, cultural assimilation, government spending, and media coverage); Eng, 552 F.3d at 1072-73 (addressing disclosure of information about public school financing and the performance of the district attorney's office); Coszalter v. City of Salem, 320 F.3d 968, 974 (9th Cir. 2003) (addressing disclosure of issues regarding working conditions, safety, and sewage);

4

McKinley, 705 F.2d at 1113-14 (addressing criticism of city's decision about compensation for the police force).

Here, plaintiff alleges that she sent racist images, along with her disapproval of the images, to a friend during a private conversation about casual and personal topics. (First Am. Compl ¶ 89.) Her speech clearly did not involve an employment grievance. However, plaintiff's speech was also not motivated by a desire to call attention to an issue nor part of a larger conversation about a topic of public interest. See Johnson v. Multnomah Cnty., 48 F.3d 420, 425 (9th Cir. 1995) ("[T]he employee's motivation . . . [is] among the many factors to be considered in light of the public's interest in the subject matter of the speech."); Roberts v. Ward, 468 F.3d 963, 971 (6th Cir. 2006) (explaining that whether "speech is a matter of public concern may turn on whether the speech is generic in nature, or whether it reflects an in-depth attempt to contribute to public discourse").

Both the form and context of plaintiff's speech weigh against a finding of public concern in this case. Text messages are inherently private. See Roe v. City & County of S.F., 109 F.3d 578, 585 (9th Cir. 1997) ("[A] limited audience weigh[s] against [a] claim of protected speech."). Plaintiff makes no allegations that her speech concerned either racism in her community or racism in the police department. Further, she makes no allegations as to who sent her the text messages or why that person sent her the text messages. Moreover, plaintiff does not suggest that her speech is a matter of public concern because of her position in law enforcement.

To find that plaintiff's speech constitutes a matter of public concern would be to find that any mention of a topic of public interest, however brief or indirect, constitutes a matter of public concern. Such a finding would collapse the court's analysis of the "the content, form, and context of a given statement, as revealed by the whole record" into solely a consideration of content. See Eng, 552 F.3d at 1070 (citations and quotations omitted). This court does not read the case law to support that proposition. Cf. Desrochers, 572 F.3d at 711 ("We have never held that a simple reference to government functioning automatically qualifies as speech on a matter of public concern[.]"); Weeks v. Bayer, 246 F.3d 1231, 1235-36 (9th Cir. 2001) ("Water cooler conversation would become the stuff of First Amendment claims, and casual remarks about work would be elevated to constitutional complaints. The First Amendment does not go that far.") (citation omitted).

Moreover, "[t]he Supreme Court has warned us that speech 'not otherwise of public concern does not attain that status because its subject matter could, in a different circumstance, have been the topic of communication to the public that might be of general interest.'" See id. at 717 (quoting Connick, 461 U.S. at 148 n.8).

For the reasons stated above as well as those set forth in the court's prior orders (Docket Nos. 16, 28), the court finds that plaintiff has still failed to allege facts sufficient to support her claims for violation of the First Amendment and First Amendment conspiracy.

IT IS THEREFORE ORDERED that defendant's motion to

dismiss Claims 3 and 4 of the First Amended Complaint be, and the same hereby is, GRANTED without leave to amend.[2]

Dated: March 27, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[2] Because plaintiff was previously given leave to amend and is proceeding on six other claims, the motion is granted without leave to amend.